# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ELIZABETH B. HALL, an individual,

    Respondent,

v.

THOMAS F. BANGASSER, an individual; BANGASSER & ASSOCIATES, INC., a Washington corporation,

    Appellants,

and

VISION VASHON, ostensibly a Washington non-profit corporation,

    Defendant.

No. 76077-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 16, 2018

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 JAN 16 AM 8: 47
FILED

BECKER, J. — After the statute of limitations expired on a promissory note between Thomas Bangasser and Elizabeth Hall, Bangasser sent Hall an e-mail acknowledging his debt under the note and implicitly promising to pay it. Hall sued to recover the debt and moved for summary judgment. The superior court granted the motion based on unrebutted evidence establishing Bangasser's acknowledgment of, and promise to pay, the debt. We affirm.

The following facts were either undisputed or unrebutted below. In October 2003, Elizabeth Hall loaned $75,000 to her brother, Thomas Bangasser. In return, Bangasser signed a promissory note as secretary/treasurer of Vision

No. 76077-7-I/2

Vashon, a now-defunct nonprofit corporation. He guaranteed the note both personally and on behalf of Bangasser & Associates, Inc.

The note became due in October 2004, but Bangasser never paid any principal or interest on the note.

In December 2015, Bangasser sent the following e-mail to Hall and two other siblings:

Margaret, Hugh and Elizabeth:

As good fortune would have it, we were finally able to refinance/sell our Vashon Island real estate and would like to now address the outstanding Promissory Notes payable to you. As you might recall, back in 2003 those funds were used to finance the purchase/renovation of the J.T. Sheffield Building for Vashon College. With the ups and downs of the financial markets, the depressed Vashon Island commercial real estate market and the nonavailability of bank commercial lending, it proved very difficult to retire or even address those loans (except Margaret).

Please review the following calculations as carried forward through to December 31 2015: (10% interest for the first year and 12% thereafter).

**$183,645.21 Balance - Elizabeth Hall**
$75,000.00 Principal (10/8/2003), $7,500.00 (365 days @ 10%) and $101,145.21 (4,102 days @ 12%).

**$170,964.93 Balance – Hugh Bangasser**
$70,000.00 Principal (10/27/2003), $7,000.00 (365 days @ 10%) and $193,964.93 (4,083 days @ 12%).

**$---.-- Balance – Margaret Delaney**

Margaret, please provide a copy of your schedule. According to my calculations, this account has been either paid in full or close to a zero balance.

-2-

Lauren, Melissa and I have much to be thankful for and especially appreciate your patience over the years. Your expeditious response to this email would be appreciated. Thank you.

Thomas F. Bangasser

Clerk's Papers at 33-34.

In July 2016, Hall filed this action for payment of the note with interest and attorney fees. Bangasser appeared pro se and filed an answer asserting various affirmative defenses, including laches and the statute of limitations.

On September 9, 2016, Hall moved for summary judgment. She argued that Bangasser's e-mail "acknowledged, confirmed and quantified his obligation" under the note, but he never made any payments on the obligation. Bangasser filed nothing in response.

Bangasser appeared at the summary judgment hearing, arguing in part that Hall's counsel had a conflict of interest and that her action was barred by the statute of limitations. He filed no declarations, affidavits, or other sworn testimony in support of his position. After hearing argument, the court ruled from the bench:

> [THE COURT:] So let me just clarify that the moving party in this case is Ms. Hall, who properly filed a motion for summary judgment. *Your opportunity to respond to that motion has come and gone by a number of days. You are now raising issues that are not properly before the court* . . . .
> . . . .
> MR. BANGASSER: Your Honor, I did file an answer. In the answer I contradict exactly what Mr. Sirianni said.
> THE COURT: I understand that. But just let me clarify for you, because I understand these rules can get very technical. The -- the answer to the complaint does not constitute a response to a motion for summary judgment. So your -- it really just constitutes

- 3 -

notice to Ms. Hall of the issues that you would like to litigate down the line. But go ahead, you can have a couple more minutes if you'd like.

MR. BANGASSER: Okay. So what Ms. -- what Mr. Sirianni filed on behalf of Elizabeth was the note. All the parties have agreed that there had been no payment on the note for about 13 years. What he attached to the note was -- to allegedly support his argument is an E-mail, and that E-mail was a settlement offer and it was incomplete. And what I have now is a copy of the complete E-mail, which says it is -- that offer and that amount from December of last year is contingent . . . .

. . . And I will give to the court a copy of the full E-mail. . . . So what we have got, really, is only a promissory note that's 13 years old, and that's it.

THE COURT: All right. . . .

Before the court is evidence that there was a contractual obligation and a breach of that obligation, as well as quantify damages. On a summary judgment motion the court does need to construe the evidence in the light most favorable to the nonmoving party, *but it is up to you, Mr. Bangasser, to respond timely and with sworn or otherwise admissible evidence in opposition to the elements that Ms. Hall has proven to show . . . that there's a genuine issue of material fact that the court needs to allow either a judge or jury ultimately at trial to decide. That has not happened here today.* . . .

I am going to grant summary judgment in favor of the moving party . . . .

. . . .

MR. BANGASSER: There's an update as to when this promissory note existed. And I'd like to go a step further, Your Honor.

. . . .

THE COURT: -- sir, no. *This is not the appropriate time for argument or for introducing evidence.* As a courtesy, I'm giving you an opportunity to review that order, because everybody has an opportunity to see every paper that's handed up to the judge. . . .

. . . *But at this point, I do find that this is not only the appropriate ruling, but one that I am compelled to enter given the Rules of Civil Procedure.*

So I have signed that order.

Report of Proceedings at 13-17 (emphasis added).

No. 76077-7-I/5

After the court signed the order granting summary judgment, Bangasser sought to file a number of documents:

> MR. BANGASSER: . . . I would like to submit this to the court, just so that it is part of the record of this transaction.
> THE COURT: *You're welcome to submit to the clerk whatever pleadings you think should be made part of the record, as long as the record is clear that they were not timely submitted and that the court has not relied on them and is not required to rely on them in making a ruling.* I have already granted summary judgment. This case is now resolved. But if you would like to supplement the record with documents filed *after I granted summary judgment,* I certainly can't and won't stop you from doing that.

Report of Proceedings at 19-20 (emphasis added).

In its subsequent order granting summary judgment, the court stated in part:

> This Court considered plaintiff's motion for summary judgment, the declaration of plaintiff in support of motion for summary judgment and plaintiff's reply in support of motion for summary judgment. *Defendants filed no opposition.* This Court also considered the pleadings and record herein, together with applicable law.

Clerk's Papers at 196 (emphasis added).

Bangasser moved for reconsideration and filed a declaration and second e-mail regarding the Note. The court denied the motion, stating

> *defendant did not respond to Plaintiff's Motion for Summary Judgment.* He did appear at oral argument and raise two issues. He argued that Plaintiff's claim was barred by the statute of limitations, and he argued that Plaintiff's counsel had a conflict of interest barring him from representing Plaintiff. *Although these arguments were not briefed, and although no sworn or otherwise admissible evidence was admitted in support of these arguments, the Court permitted oral argument.* After considering the argument of the parties, the Court found that Defendant Bangasser's

- 5 -

> objections were without merit, and the Court granted Plaintiff's Motion for Summary Judgment. Defendant Bangasser now re-raises in his Motion to Reconsider his objections based on the statute of limitations as well as the purported conflict of interest.
>
> With respect to the statute of limitations, Defendant bears the burden of proof. Rivas v. Overlake Hosp. Medical Center, 164 Wn.2d 261, 267[, 189 P.3d 753] (2008). *Defendant submitted no proof in support of his objection to the Statute of limitations.* The record as submitted by Plaintiff is sufficient to establish compliance with RCW 4.16.040 and RCW 4.16.280.

Clerk's Papers at 206 (emphasis added). Bangasser, Bangasser & Associates Inc., and Vision Vashon appeal.

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Lybbert, 141 Wn.2d at 34. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Lybbert, 141 Wn.2d at 34. Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact. Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

Bangasser first contends summary judgment was improper because Hall's action was time barred. We disagree.

Under RCW 4.16.040(1), an action on a note or other written contract must be commenced within six years. But RCW 4.16.280 provides:

> No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the

> operation of this chapter, unless it is contained in *some writing signed* by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest.

(Emphasis added.) Under RCW 4.16.280, an untimely action may be maintained if "a written acknowledgement or promise signed by the debtor . . . recognizes the debt's existence, is communicated to the creditor, and does not indicate an intent not to pay." In re Receivership of Tragopan Props., LLC, 164 Wn. App. 268, 273, 263 P.3d 613 (2011), citing Fetty v. Wenger, 110 Wn. App. 598, 602, 36 P.3d 1123 (2001), review denied, 147 Wn.2d 1011 (2002); Addison v. Stafford, 183 Wash. 313, 314-15, 48 P.2d 202 (1935). An acknowledgment made after expiration of the limitations period will be strictly construed. Tragopan, 164 Wn. App. at 273. "'The debt being barred, it is possible that one may acknowledge it without intending to pay it.'" Beckman v. Alaska Dredging Co., 180 Wash. 321, 328, 40 P.2d 117 (1935) (internal quotation marks omitted), quoting Tucker v. Guerrier, 170 Wash. 165, 169, 15 P.2d 936 (1932). Accordingly, an acknowledgment after the limitations period must be unequivocal and "'so clear that a promise to pay must necessarily be implied.'" Thisler v. Stephenson, 54 Wash. 605, 607, 103 P. 987 (1909), quoting Bank of Montreal v. Guse, 51 Wash. 365, 371, 98 P. 1127 (1909).

Bangasser's December 2015 e-mail recognized the debt, communicated that fact to Hall, and unequivocally indicated an intent to pay. The e-mail opened with Bangasser announcing that he recently sold some real estate and wanted to "now address" his outstanding debts. It explained why the debts had not been

paid sooner, asked Hall and others to review his debt calculations, including interest to date, and made no mention of an offset. A promise to pay is thus necessarily implied in the e-mail. Bangasser's arguments to the contrary are raised for the first time on appeal and based on evidence that was not before the court when it granted summary judgment.

Citing federal cases, Bangasser argues that the e-mail was an insufficient acknowledgment because RCW 4.16.280 requires a signed writing and the law regarding e-mails as signed writings "remains unsettled." Appellants' Br. at 17. This argument fails for several reasons.

First, it is apparently raised for the first time on appeal. RAP 2.5(a). Second, Bangasser offers no statutory analysis and the federal cases he cites are distinguishable. McMunigal v. Bloch, No. C10-02765SI, 2010 WL 5399219 (N.D. Cal. Dec. 23, 2010) (court order) (an e-mail sent *to* the defendant was not a writing signed by the defendant for purposes of the Copyright Act, and series of e-mails showing negotiations was insufficient to show a full and complete agreement); Jackson & Perkins Wholesale, Inc. v. Smith Rose Nursery, Inc., No. 03-3091-PA, 2007 WL 756749, at *4 (D. Or. Mar. 7, 2007) (court order) (e-mail negotiations did not show an agreement to settle, nor was there a signed writing satisfying contract requirement for "'a written instrument signed by the parties to be bound'" to that effect).

Third, Washington courts have held in other contexts that an e-mail is a "writing." Mechling v. City of Monroe, 152 Wn. App. 830, 843, 222 P.3d 808

(2009), review denied, 169 Wn.2d 1007 (2010), O'Neill v. City of Shoreline, 145 Wn. App. 913, 923, 187 P.3d 822 (2008), aff'd in part and rev'd in part, 170 Wn.2d 138, 240 P.3d 1149 (2010). And fourth, ER 1001(a) defines "Writings and Recordings" as including words "set down by . . . electronic recording, or other form of data compilation." 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 1001.2, at 358 (6th ed. 2016) ("An image viewed on an electronic monitor (e-mail, text message, posting on social media, or the like) is included within the definition of a *writing*.").

Bangasser also argues for the first time on appeal that even if an acknowledgment or promise occurred, it occurred outside of the statute of limitations requiring the plaintiff to sue on the acknowledged agreement and not the promissory note. Appellants' Br. at 18. He contends the failure to sue on the acknowledged agreement was fatal because "the statute of limitations [has] elapsed" for that claim. Appellants' Br. at 20. We need not consider this contention. RAP 2.5(a). We note, however, that Hall's complaint expressly based her right to recovery on the allegation that "Mr. Bangasser reaffirmed and confirmed his obligation to Ms. Hall" in the December 2015 e-mail, and that he reaffirmed the original terms of the agreement. Thus, even assuming Hall was required to sue on the terms of the acknowledged agreement and not the note, her complaint encompassed that claim.

In his reply brief, Bangasser contends the trial court and this court *must* consider the evidence he filed after the court granted summary judgment but

before it denied reconsideration. Trial courts, however, have discretion to consider new or additional evidence on reconsideration. See Chen v. State, 86 Wn. App. 183, 191-92, 937 P.2d 612, review denied, 133 Wn.2d 1020 (1997); Martini v. Post, 178 Wn. App. 153, 161, 313 P.3d 473 (2013). Bangasser fails to address that discretionary authority. In any case, the result would be the same even if we considered the second e-mail submitted on reconsideration. In that e-mail, Bangasser stated, "I anticipate paying" the debts to Hall and the others "from the proceeds of my 5% MidTown compensation when I receive the funds." Clerk's Papers at 46. Even when viewed in a light most favorable to Bangasser, this e-mail did not assert an offset against Hall personally. Nor did it make his promise to pay the debt conditional. At most, the e-mail asserts a preference to pay off the debts with funds from a third party—Midtown.

For the first time in his reply brief, Bangasser claims his failure to timely file his evidence below was excusable neglect under CR 60(b)(1). We need not consider claims raised for the first time on appeal or for the first time in a reply brief. RAP 2.5(a); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Furthermore, Bangasser's argument runs counter to the well settled rule that pro se litigants are held to the same standards as attorneys. Kelsey v. Kelsey, 179 Wn. App. 360, 368, 317 P.3d 1096, review denied, 180 Wn.2d 1017, cert. denied, 135 S. Ct. 451 (2014).

Last, Bangasser contends the superior court's attorney fee award must be remanded because the court entered insufficient findings and conclusions. Hall

counters that findings and conclusions are required only when fees were disputed below.

Ordinarily, we enforce the requirement for the trial court to enter findings of fact and conclusions of law establishing an adequate record to review the fee award. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). The absence of adequate findings will usually necessitate a remand for entry of findings and conclusions supporting the fee award. Mahler, 135 Wn.2d at 435. To be adequate, findings should address whether the hourly rates were reasonable and whether the attorney services were essential, duplicative, or unnecessary. Mahler, 135 Wn.2d at 435.

Here, the order granting summary judgment awards "reasonable attorney's fees in the amount of $3,510.00." The order was based on counsel's declaration at the time of filing the motion for summary judgment:

> My regular hourly rate is $595. I spent a total of 4.4 hours preparing the complaint, the motion for summary judgment, two declarations in support of that motion, and a proposed order. Total fees to date are $2,618. I expect to spend another 1.5 hours preparing the reply brief and arguing the motion. Thus, total fees in this matter will be not less than $3,510.50.

Clerk's Papers at 25.

Appellant did not object below to the hourly rate or to the amount of time spent by counsel. And even on appeal, his objection is pro forma. The amount of the award is reasonable on its face in light of counsel's declaration, and appellant has not shown any reason to suppose the amount of the award would be changed if it were remanded. Therefore, the error in failing to enter specific

findings as required by <u>Mahler</u> is harmless. A remand would waste time and merely cause the parties to incur additional fees. Accordingly, we decline to remand for entry of formal findings.

Hall requests attorney fees on appeal under the attorney fee provision in the note and RAP 18.1. The note provides, "If suit should be brought to collect any of the principal or interest of this Note, the prevailing party shall be entitled to reasonable attorney's fees and costs." We award Hall reasonable attorney fees and costs on appeal subject to compliance with RAP 18.1.

Affirmed.

Becker, J.

Leach, J.